Estate of Lena Hartzell.

Argued April 13, 1934.

Before TREX-
LER, P. J., KELLER, BALDRIGE, STADTFELD, PARKER and
JAMES, JJ.

*George F. Whitmer,* for appellant.

*W. J. Geary,* for appellee.

OPINION BY PARKER, J., July 13, 1934:

Pursuant to an order, by an orphans' court, for the
public sale of real estate of a decedent, Lena Hartzell,
for the payment of her debts, her son and administra-
tor, William H. Hartzell, having been authorized by
the court to bid, became the purchaser. This appeal
is from an order of the court below dismissing the
exceptions of Emma Kline and her husband, A. L.
Kline, daughter and son-in-law of decedent, to the con-
firmation of the sale.

The exceptants alleged that William H. Hartzell,
as agent for his mother, held the legal title to her real
estate as security for the payment of debts due by
Lena Hartzell to William H. Hartzell, John H. Hart-
zell, and Lee Kline; that in the year 1925 William H.
Hartzell, as agent for his mother, an old lady unable
to care for herself, agreed orally with the exceptants
that if A. L. Kline would remit the balance due him
from Lena Hartzell and if the Klines would move into
a house on the land of their mother and take care of

her until her death, then Emma Kline and A. L. Kline should have thirty-five acres of land, the remnant of a fifty-acre tract on which the house was situated, and fifteen acres adjoining sufficient to make a total of fifty acres; that the offer was accepted and appellants went into possession of the real estate described, made valuable improvements, paid the taxes for two years, and "kept, maintained, fed and clothed" Lena Hartzell until her death, and agreed that Lee Kline would remit the balance due him on receipt of a conveyance for the fifty acres.

Testimony was taken in support of the exceptions when the exceptants endeavored to prove a parol agreement, but then relied rather upon an alleged agreement directly with Mrs. Hartzell than the one set up in the exceptions. The appellee offered testimony strongly contradictory of the assertions of the exceptants and, in addition, relied upon the legal defense that the court did not, in this proceeding, have jurisdiction to pass upon the matters raised by the exceptions, and that in any event the exceptants had failed to show an enforceable parol agreement and, more particularly, a performance sufficient to take the parol agreement out of the statute of frauds. While the court below questioned its own jurisdiction, it undertook to dispose of the matter on the merits and held that the agreement was within the statute of frauds and could not be enforced, and that as a result the sale should be confirmed absolutely.

While the appellate courts do not appear to have decided the precise question of jurisdiction raised here, the principles are well settled. It has been determined again and again that the orphans' court is a court of limited jurisdiction (Brinker v. Brinker, 7 Pa. 53, 55), exercising only such power as is given it by statute expressly or by necessary implication; and that while proceedings in the orphans' court are modeled on

those in a court of equity and can proceed according to equity practice (Horner v. Hasbrouck, 41 Pa. 169, 180; Mallory's Est. 285 Pa. 186, 131 A. 714), it has no general equity jurisdiction (Power v. Grogan, 232 Pa. 387, 395, 396, 81 A. 416; Cutter's Est., 286 Pa. 505, 507, 134 A. 489).

By Section 9 of the Act of June 7, 1917, P. L. 363, it is provided that the jurisdiction of the several orphans' courts shall extend to "the specific execution of contracts made by decedents to sell and convey any real estate of which such decedents shall die seised, and of contracts made by decedents to purchase any real estate" (20 PS 2249), and "the sale of real estate of decedents for payment of their debts" (20 PS 2246), and "all cases within their respective counties, wherein executors, administrators, guardians, or trustees may be possessed of, or are in any way accountable for, any real or personal estate of the decedent" (20 PS 2252), with the further provision that "such jurisdiction shall be exercised under the limitations and in the manner provided by law" (20 PS 2254). As is pointed out in Cutler's Est., 225 Pa. 167, 170, 73 A. 1111, "ownership by the testator at the time of his death is antecedently implied, and where such ownership can be affirmed with respect to any property, the executor is charged with accountability therefor, whether in or out of his possession, and the jurisdiction of the proper orphans' court over both is complete." The orphans' court does not have jurisdiction to decide whether property which has never been included in the decedent's estate as assets thereof and which is claimed by third parties should be so included (Schnepf's Est., 48 Pa. Superior Ct. 580; Cutter's Est., supra); and that court does not have jurisdiction to set aside a conveyance alleged to have been made in fraud of creditors (Walkinshaw's Est., 275 Pa. 121, 118 A. 766; Cutter's Est., supra).

"If at testator's death the property is shown to have been in his possession, or if for any other reason it was presumptively his, a mere denial of his ownership unsupported will not oust the court of its jurisdiction, but the court may proceed with the investigation so far as to inform itself whether the denial is made in good faith and a substantial dispute exists": Cutler's Est., supra, p. 171. If the dispute as to possession and title to the property be a substantial one, the orphans' court may not ordinarily determine the matter in dispute, but it must be referred to a court of competent jurisdiction for that purpose. These principles are applicable to cases where the orphans' court is petitioned for the purpose of authorizing a sale for the payment of debts, and it follows that the orphans' court may here at least determine in limine whether a substantial dispute exists.

However, by the Act of June 7, 1917, P. L. 363, §9 [i] (20 PS 2249), the jurisdiction of the orphans' court is extended to and embraces: "The specific execution of contracts made by decedents to sell and convey any real estate of which such decedents shall die seised, etc.," and by the "Fiduciaries Act of 1917," P. L. 447, §18 [a-f inc.] (20 PS 611-616), it is provided that the vendor or vendee, or their representatives, may petition the court for specific performance, and that court is given power to decree specific performance. The sections of the acts just referred to are respectively re-enactments of sections of the Act of February 24, 1834, and of the Act of April 28, 1899, although there are some slight changes in the new act which are not here important. It was settled that in such cases as were provided for in the former acts, "the jurisdiction of the orphans' court is [was] exclusive, and that neither a common law court nor a chancellor has [had] jurisdiction in such cases": Gable v. Whiteside, 242 Pa. 188, 193, 88 A. 931. The

same principles would seem to be applicable to the Acts of 1917.

For the purpose of determining the present controversy, it is not important to determine whether the question for the court was as to the sufficiency of the evidence to satisfy his conscience as a chancellor that the Klines would be entitled to specific performance or only that a substantial dispute existed, for, as a matter of law, the alleged vendees were not entitled to performance and consequently not even a substantial dispute existed.

The claim of the appellants depended upon proof of an enforceable parol agreement for the sale of land. In Hart v. Carroll, 85 Pa. 508, 510, repeated in Wright v. Nulton, 219 Pa. 253, 256, 68 A. 707, it was said: "In order to take a parol contract for the sale of lands out of the operation of the statute of frauds, its terms must be shown by full, complete, satisfactory and indubitable proof. The evidence must define the boundaries and indicate the quantity of the land. It must fix the amount of the consideration. It must establish the fact that possession was taken in pursuance of the contract, and at or immediately after the time it was made, the fact that the change of possession was notorious, and the fact that it has been exclusive, continuous and maintained. And it must show performance or part performance by the vendee which could not be compensated in damages, and such as would make rescission inequitable and unjust."

The proofs not only failed to show the fact that the Klines took possession of the premises in pursuance of the alleged contract and at or immediately after the time it was made, or the fact that the change of possession was notorious, or the fact that it has been exclusive, but their own admissions and proofs showed affirmatively that they did not take such possession.

These admissions were that the mother, Lena Hartzell, was in possession of and the owner of the premises in question, and that pursuant to an arrangement with one of the sons, the Klines, in January, 1925, moved onto the premises and were to keep the mother for what they could raise thereon. They admit that they then became dissatisfied and, as one of the appellants expressed it, they saw they were in trouble and notified the heirs that they would not stay, and claim that thereafter the children, about April of that year, agreed that if they would stay they should have certain land. Appellants also claim that this arrangement was ratified at another meeting at the office of Mr. Corbett, an attorney in Clarion, and that it was there agreed that a written agreement would be made out to protect them. The old lady, then past eighty years, continued to live upon the premises until her death. From this it is most apparent that the possession of the land was taken not in pursuance of the contract, but prior to the date it is alleged the agreement was made; that there was no notorious change of possession; and that the possession was not exclusive. Just as in the case of Wright v. Nulton, supra, the possession was merely a continuation of that previously existing. This is not sufficient under the rule laid down in Dougan v. Blocher, 24 Pa. 28, where it was held that evidence of possession taken before an alleged parol contract was not sufficient to establish part performance. "It is not to be disputed, at this time of day, that to withdraw a parol sale of lands from the blighting effects of the statute of frauds, there must be an open and absolute possession taken in pursuance of the contract, with a view to the performance of it. It is consequently a settled rule that a parol sale to a tenant in possession is' within the statute, though his possession be afterwards continued, because there is no change of possession, in

execution of the contract": Christy v. Barnhart, 14 Pa. 260. The presumptions in this respect are also against the appellants. "Where a parent's property is occupied by a child, the presumption is, in the absence of any qualifying circumstances, that the possession is in subordination to the former's title": Glass v. Tremellen, 294 Pa. 436, 440, 144 A. 413.

Again, the appellants failed to take themselves out of the statute of frauds, for the possession must be "accompanied by such improvements and arrangements as will not reasonably admit of compensation in damages": Dougan v. Blocher, supra, p. 34. Although it was alleged in the exceptions that valuable improvements were made, there is not any evidence that any valuable improvements were made or that anything more was done than a tenant would usually do on leased premises, except that taxes were paid for two years. Improvements on land for which the promisee may reasonably be compensated in damages are not sufficient: Detrick v. Sharrar, 95 Pa. 521; Ballard v. Ward, 89 Pa. 358; Hart v. Carroll, supra; McKowen v. McDonald, 43 Pa. 441; Moore v. Small, 19 Pa. 461. It is likewise well settled that personal service such as was provided for the mother is capable of compensation in an action for the value thereof: Hertzog v. Hertzog's Admr., 34 Pa. 418. There was a total absence of proof showing performance or part performance by the vendee which could not be compensated in damages or such as would make rescission inequitable and unjust.

Again, as the court below found, the proofs as to many elements essential to an establishment of the parol contract and the taking of it out of the statute of frauds were far from being full, complete, satisfactory and indubitable. It would unduly extend this opinion to refer to the numerous items of evidence which were contradictory, vague, and unsatis-

factory. Upon this ground alone, if the case had been submitted to a jury, the court would have been justified in holding as a matter of law that the proofs were not sufficient. The exceptants having failed to show the title alleged by them in their exceptions, or any other valid claim to the property, we are all of the opinion that the lower court properly dismissed the exceptions and that he had jurisdiction not only to determine that matter, but to confirm the sale.

Judgment of the lower court is affirmed.