J-S11031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SENTHIL PRABAKARAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHANNON JOHNSON | : | |
| | : | |
| Appellant | : | No. 1265 WDA 2021 |

Appeal from the Decree Entered October 12, 2021
In the Court of Common Pleas of Erie County
Civil Division at No(s):  NO. 10966-2021

BEFORE:  PANELLA, P.J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                     **FILED: MAY 27, 2022**

Shannon Johnson ("Mother") appeals from the decree that denied her petition seeking sole legal custody of B.S. ("the Child"), born December 2011, and granted Senthil Prabakaran ("Father") primary physical custody.  We affirm.

Mother and Father married in 2009 and separated in 2017.  A Maine court entered an order divorcing the parties in 2018.[1]  The Maine court awarded the parties shared legal custody of the Child, granted Mother primary physical custody of the Child with Father having partial physical custody of the Child on alternating weekends and additional custodial time during the Child's school vacations.  **See** Divorce Judgment, PORDC-FM-17-794, 7/30/18, at

---

[1] It appears that Mother lived in Maine when she filed a complaint in divorce, before moving to New York, and then from New York to Pennsylvania.

9-11. Mother subsequently moved to Pennsylvania in 2019, and Father moved to Michigan.

Disputes between Mother and Father arose over the Child's education and healthcare. In June 2021, Mother filed a petition in Pennsylvania to modify the 2018 Maine custody order.[2] Mother sought sole legal custody as to decisions on the Child's education, medical and mental health, and dental care. Father filed a notice of relocation in July 2021, in which he sought primary physical custody.[3] Mother filed a counter-affidavit and objected to Father's notice of relocation. The trial court issued a scheduling order to file and serve pre-trial statements no later than fourteen days before trial. **See** Order, 8/9/21. Father filed his pre-trial statement nine days before trial and served Mother four days before trial.

The trial court held hearings on September 23 and 30, 2021. Mother represented herself at trial. When Mother apparently began reading from written notes, the court admitted her notes as Exhibit B, and admitted the remainder of her exhibits, which included text messages, photos, and prior

---

[2] Although not raised by Mother and Father, and not discussed by the trial court, we note that Pennsylvania became the Child's home state for the purposes of modifying the initial 2018 Maine custody order and deciding custody matters. **See A.L.-S. v. B.S.**, 117 A.3d 352, 360 (Pa. Super. 2015) (discussing the Uniform Child Custody Jurisdiction Enforcement Act, 23 Pa.C.S.A. §§ 5401–5482.).

[3] Because Mother and Father previously established residences in Pennsylvania and Michigan, respectively, Father was not required to file a notice of his intent to relocate. **See D.K. v. S.P.K.**, 102 A.3d 467, 474 (Pa. Super. 2014).

court orders. *See* N.T., 9/23/21, at 14-15. Mother testified, in part, that she sought sole legal custody because of Father's lack of cooperation and she was tired of his emotional and verbal abuse. *See id*. at 20. Father, who proceeded with counsel, testified and presented evidence in support of relocating the Child to Michigan.

On October 12, 2021, the trial court entered an order denying Mother's petition for sole legal custody of the Child and granting Father primary physical custody.[4]

The court acknowledged that granting Father primary custody implicated a substantial move for the Child, and it stated that it considered the "relevant relocation factors" as part of its analysis of the Child's best interest under 23 Pa.C.S.A. § 5328(a)(16). *See* Opinion and Order, 10/12/21, at 1 n.1, 7-8. Mother subsequently retained counsel. Counsel timely appealed, and both Mother and the court complied with Pa.R.A.P. 1925.

Mother raises the following issues on appeal:

_____

[4] The trial court determined, in part, that Mother was "actively undermining Father's relationship with the [Child]." Opinion and Order, 10/12/21, at 7. It found further that "most, if not all, of the conflict between the parties emanates from Mother's end." *Id*. The court also concluded that "Mother's alternative education attempts have been largely unsuccessful, and her resistance to ordinary dental care has, according to Father's credible testimony, jeopardized the integrity of [the Child's] adult teeth." *Id*. at 6. Additionally, the court credited Father's testimony that he sought relocation to allow the Child to "'just be a kid,' and to support his emotional and educational growth." *Id*.

1. The trial court erred in failing to address the 23 Pa.C.S.[A.] § 5337(h) relocation factors in detail, instead writing one conclusory paragraph under its section 23 Pa.C.S.[A.] § 5328(a)(16) analysis.

2. The trial court erred and violated Mother's due process rights by limiting her testimony, requiring her to submit prepared notes, and limiting her ability to introduce evidence.

3. The trial court erred in failing to create a full record.

4. The trial court erred in permitting [Father] to introduce evidence after failing to timely file a pretrial statement and exhibits. . .. [5]

Mother's Brief at 5 (renumbered and unnecessary capitalization omitted).

Before we may address Mother's issues, we must determine whether she preserved them for review, namely, her second, third, and fourth issues. It is well settled that a party claiming an error before this Court must raise the issue in the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal"); *see also Tecce v. Hally*, 106 A.3d 728, 732 (Pa. Super. 2014) ("Parties may waive rights, even due process rights and other rights of constitutional magnitude" (citation omitted)); *Morgan v. Morgan*, 117 A.3d 757, 762 (Pa.

---

[5] Mother listed three additional questions involved in this appeal, but expressly stated that she "waives" those issues in the argument section of her brief. *See* Mother's Brief at 5, 28. Therefore, we will not consider them. *See Koller Concrete, Inc. v. Tube City IMS, LLC*, 115 A.3d 312, 321 (Pa. Super. 2015) (noting that this Court will not address an issue presented in statement of questions involved where there is no corresponding analysis included in the brief).

Super. 2015) (explaining that "appellants may not raise issues for the first time in a Rule 1925(b) statement" (citation omitted)).

In her second and third issues, Mother claims that the trial court improperly limited her testimony and ability to introduce evidence and erred by failing to create a full record. **See** Mother's Brief at 5, 17. Our review of the record establishes that Mother did not raise issues two and three before the trial court. Mother did not object when the court admitted her pre-trial statement as an exhibit instead of reading from it. **See** N.T., 9/23/21, at 14. At no point did Mother state that she wished to present evidence in addition to that which the court allowed. **See id**. at 19 (indicating that Mother had no more exhibits to admit), 26 (indicating that Mother had no further witnesses to call), 45 (indicating that Mother rested her case but wanted to question Father), 101 (ending the first day of hearings without a request from Mother to present additional evidence). Additionally, at the second hearing on September 30, 2021, the court permitted Mother to make a statement regarding events that happened after the first hearing. **See** N.T., 9/30/21, at 22.

In her fourth issue, Mother asserts that the court erred in allowing Father to present evidence despite his untimely filing and service of his pre-trial statement. **See id**. at 5, 27-28. Based on our review, we conclude that Mother likewise failed to raise this issue in the trial court. Mother did not specifically request the preclusion of all of Father's evidence based on the late filing and service of his pre-trial statement. **See** Trial Court Opinion, 12/1/21,

at 7 n.7; *see also* N.T., 9/23/21, at 45. Accordingly, because Mother failed to raise her second, third, and fourth issues with the trial court, those issues are waived. *See* Pa.R.A.P. 302(a); *Tecce*, 106 A.3d at 732. Thus, we will not review the merits of these issues.

Mother's first issue contends that the trial court failed to address in detail all of the relocation factors under the Custody Act statute ("the Act"), 23 Pa.C.S.A. §§ 5321-5340.

When reviewing a trial court's custody decision, our scope of review is of the broadest type and our standard of review is an abuse of discretion. *See* *D.K. v. S.P.K.*, 102 A.3d 467, 478 (Pa. Super. 2014).

> We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Id*. (citation omitted).

The trial court, when deciding a petition to modify custody, must consider the best interest of the child based on the following sixteen factors set forth in section 5328(a):

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

J-S11031-22

(14) The history of drug or alcohol abuse of a party or member of a party's household.

- 8 -

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a); *See A.V. v. S.T.*, 87 A.3d 818, 821-22 & n.2 (Pa. Super. 2014).

Additionally, when a parent seeks to relocate and the non-relocating parent objects, the trial court must consider the following ten relocation factors in section 5337(h):

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h); *see also E.D. v. M.P.*, 33 A.3d 73, 82 n.6 (Pa. Super. 2011) (noting that a trial court should consider the section 5337(h) factors when a parent provides notice of his or her intent to relocate and the non-relocating parent objects).

Section 5322 defines relocation as "[a] change in a residence of the child which substantially impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322. As this Court held in *D.K.*, where neither parent is relocating, and only the custodial rights of the parties are at issue, a trial court's decision does not automatically require the court to consider section 5337 in its entirety. *See D.K.* 102 A.3d at 474. Rather, the trial court should "consider the relevant relocation factors of section 5337(h) in its section 5328(a) best interest analysis" if a change in custody requires the child to move a significant distance. *See id*. at 476. As noted in *D.K.*, several of the section 5328(a) best interest factors and the section 5337(h) factors overlap. *See id*. at 476-77 (noting that overlap between the best interest factors 2, 3, 5, 6, 7, and 8 and relocation factors 1, 4, 5, 9). Additionally, where the child stands to move to a significantly distant location,

the trial court would still need to consider the age, developmental stage, needs of the child and the likely impact the child's change

- 10 -

of residence will have on the child's physical, educational and emotional development (23 Pa.C.S.A. § 5337(h)(2)), the feasibility of preserving the relationship between the other parent and the child (23 Pa.C.S.A. § 5337(h)(3)), and whether the change in the child's residence will enhance the general quality of life for the child (23 Pa.C.S.A. § 5337(h)(7)). Even though these three factors are not directly or implicitly encompassed in section 5328(a), they are clearly relevant to the decision of what is in the child's best interest when contemplating a move of significant distance to the other parent's home, and are therefore necessarily part of the trial court's analysis pursuant to section 5328(a)(16), which requires a trial court to consider "any other relevant factor" in making a custody determination. 23 Pa.C.S.A. § 5328(a)(16).

*Id*. at 477.

In any custody action, the trial court must "delineate the reasons for its decision on the record in open court or in a written opinion or order." *See* 23 Pa.C.S.A. § 5323(d); *see also A.M.S. v. M.R.C.*, 70 A.3d 830, 835 (Pa. Super. 2013) (noting that section 5323(d) applies to cases involving custody and relocation). However, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *See M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013).

Mother argues here that the change in primary custody to Father required the trial court to consider all of the relocation factors. *See* Mother's Brief at 16. She notes that the court discussed relocation factors in its order granting Father primary physical custody but asserts that the court's discussion was "conclusory." *Id*. at 10. She asserts that the court's discussion did not consider relocation factors 1, 2, 3, 7, and 8. *See id*. at 15-16.

The trial court, in its opinion and order, cited **D.K.** and explained that the relocation factors did not "strictly apply" because Father had established his residence in Michigan. **See** Opinion and Order, 10/12/21, at 1 n.1. The court thereafter reviewed all sixteen best interest factors pursuant to section 5328(a), and under the sixteenth factor stated:

> [The] Child's move to Michigan will upset the status quo and may cause temporary distress for [him]. However, Father appeared attuned to the potential adjustment issues and credibly asserted that he would seek counseling and other emotional support for [the Child] as needed. In light of the evidence strongly demonstrating that Father's and [the Child's] historical[ly] strong bond is under threat by Mother's relative abuse of her influence over [the Child,] as the long-distance primary custodian, whether intentional or not, the risk of any temporary disruption caused by the move is outweighed by the need to place the [C]hild in the home most likely to support a healthy relationship with both parents, and where he will best thrive emotionally, academically[,] and physically. Father has set forth a generous, feasible partial custody schedule for Mother considering the logistics and financial circumstances of the parties.

**Id**. at 7-8.

In its Rule 1925(a) opinion, the trial court rejected Mother's claim that that its discussion of the relocation factors lacked adequate detail. **See** Trial Court Opinion, 12/1/21, at 4-5. The court explained that it properly addressed the relevant relocation factors not included in its analysis of section 5328(a) and that Mother's claim "elevate[d] form over substance." **Id**.

Following our review, we conclude that the trial court's discussion in its opinion and order granting Father primary physical custody adequately delineated its consideration of the relevant relocation factors. The court's

discussion of the relevant section 5337(h) factors as part of its section 5328(a)(16) best interest analysis comported with this Court decision in *D.K. See D.K.*, 102 A.3d at 477. Although concise, the court's discussion touched upon relocation factors 2 (the age and needs of the Child and the likely impact on the Child's development), 3 (the feasibility of preserving the relationship between the Child and Mother), and 7 (the enhancement of the Child's general quality of life), as this Court instructed in *D.K. See* Opinion and Order, 10/12/21, at 7-8. Moreover, although the court did not expressly mention relocation factor 1, that factor was encompassed in the court's discussion of best interest factors 3, 5, and 8. *See id*. at 6-7 (indicating that the trial court found that Mother interfered with Father's relationship with the Child); *accord D.K.*, 102 A.3d at 477 (noting that relocation factor 1, which addresses a child's relationships with the non-relocating parent, siblings, and other significant persons, encompasses best interest factors 3, 5, 8, which address the parental duties performed by the parties, the availability of extended family, and sibling relationships, respectively). Lastly, the court issued specific findings favoring Father's motivations for seeking primary custody and against Mother's opposition, as required by relocation factor 8. *See* Opinion and Order, 10/12/21, at 6-7. Thus, we discern no merit to Mother's claim that the court's consideration of the relevant relocation factors lacked sufficient

- 13 -

detail.[6]    Because we find no abuse of discretion in the trial court's analysis, we affirm the decree granting Father primary custody of the Child.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  5/27/2022

---

[6] Notably, while Mother asserts that the trial court failed to consider necessary relocation factors, she does not argue that the court's findings relevant to those factors constituted an abuse of discretion.  **See** Mother's Brief at 15-16, 28.